# United States Court of Appeals for the Fifth Circuit

No. 25-50584
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

July 15, 2026

Lyle W. Cayce
Clerk

Jennifer Ferrell Brantley,

*Plaintiff—Appellant*,

*versus*

The University of Texas at Austin,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:25-CV-594

Before Davis, Jones, and Ho, *Circuit Judges*.

Per Curiam:[*]

Plaintiff-Appellant Jennifer Brantley, proceeding pro se, sued Defendant-Appellee the University of Texas at Austin under 42 U.S.C. § 1983 and the Rehabilitation Act, alleging the school discriminated against her on the basis of disability when it disciplined her for harassing a faculty

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

member. The district court dismissed the suit for lack of subject matter jurisdiction and denied leave to amend as futile. We AFFIRM.

Brantley is an undergraduate student enrolled at the University of Texas at Austin. She avers she has various disabilities—including Attention-Deficit/Hyperactivity Disorder, Complex Post-Traumatic Stress Disorder, and Premenstrual Dysphoric Disorder—which cause processing and communication impairments.

Brantley's pleadings and their attachments[1] show the following. In the fall of 2024, Brantley was enrolled in a class taught by Dr. Scott Wolford. On January 12, 2025, Wolford submitted a report to the school's Behavioral Concerns Advice Line (BCAL) about Brantley. His report alleges that throughout the semester Brantley sent him "[l]ots of emails" usually "3-4 emails" per day. According to the report, the emails "were a mix of musings that read like diary entries" and included "descriptions of mental disabilities and attempts at self-diagnosis," "stories about past trauma" and other more routine subjects such as "decisions over majors." He surmised Brantley had assigned him "the role of friend or confidant." Wolford reported concern about the volume of emails and stated he was not qualified to provide the support Brantley needed.

Despite no longer being enrolled in Wolford's class, Brantley continued to email Wolford throughout the spring of 2025. On February 7, 2025, Wolford provided Brantley a list of campus mental health resources and asked her to limit communication to academic matters. Brantley alleges

---

[1] Although the district court dismissed this case at the pleading stage, we may rely on the attachments Brantley submitted with her Complaint. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) ("In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, *including attachments thereto*." (emphasis added)).

this response "contributed to [her] sense of dismissal and emotional harm" and due to her disabilities, she "felt compelled to apologize and attempt to repair the relationship" by sending Wolford yet more emails. Throughout March 2025, Wolford repeatedly asked Brantley to cease contacting him, and even told her that receiving her hundreds of emails caused him "a tremendous amount of distress." But Brantley did not comply with his requests to cease communication and continued to email Wolford.

On March 31, 2025, Wolford filed a report with the Office of Student Conduct. The Office initiated a disciplinary investigation, and Brantley responded. She "accepted responsibility for continuing to communicate with [Wolford] after he expressed a desire to end contact." But she argued that her behavior resulted from "her history of trauma and neurodivergent communication patterns." While the disciplinary action was pending, Brantley filed various Title IX complaints about the discipline proceeding. Ultimately, Brantley was placed on disciplinary probation. She appealed this sanction, but the school upheld the discipline.

Brantley then filed the instant suit. She brought a procedural due process claim under 42 U.S.C. § 1983, alleging Wolford's cease-contact requests did not put her on notice that she might be disciplined for further communication. She also brought a discrimination claim under the Rehabilitation Act, 29 U.S.C. § 794, contending the University "failed to provide reasonable accommodation or engage in an individualized assessment of [her] disability-related communication patterns prior to imposing disciplinary sanctions." Lastly, she brought a retaliation claim under the Rehabilitation Act, arguing the University retaliated by "imposing sanctions instead of offering supportive measures" after she disclosed her disabilities and requested "a trauma-informed review of her case." Brantley requested the court enjoin the sanctions and remove them from her academic record.

No. 25-50584

The district court dismissed the suit for lack of jurisdiction based on sovereign immunity. As to her § 1983 claim, it found Brantley improperly sued the University itself rather than the proper officials.[2] And as to her Rehabilitation Act claims, it held she failed to allege the University received federal funding as required to invoke the Act's waiver of sovereign immunity.[3]

The district court further denied leave to amend as futile. It observed that even if the jurisdictional pleading deficiencies could be remedied, Brantley failed to state a claim on which relief could be granted. Regarding her due process claim, Brantley's complaint indicated she had received notice of the disciplinary investigation, an opportunity to respond before the disciplinary decision was made, and an appeal procedure, which is all the law requires.[4] As to her discrimination claim, the court explained that the Rehabilitation Act does not require the University to tolerate harassing behavior, even where such behavior is the product of the student's disability. Finally, as to Brantley's retaliation claim, the district court noted that Brantley's purported protected activity—her filing of Title IX reports—occurred *after* the disciplinary process began, so no inference of retaliation could arise.

We agree with the district court's conclusions. Brantley's core allegation is that the University's decision to sanction her constituted unlawful discrimination because her harassment of Wolford arose from her disabilities. But we have held in the related employment context that federal disability law does not prohibit an employer from disciplining an employee

---

[2] *See Ex parte Young*, 209 U.S. 123, 155–56 (1908).

[3] *See Block v. Tex. Bd. of L. Examiners*, 952 F.3d 613, 619 (5th Cir. 2020).

[4] *See Goss v. Lopez*, 419 U.S. 565, 584 (1975).

for inappropriate behavior, even where that behavior was the result of a disability.[5] Although Brantley contends that this case law is inapplicable because it arose in the employment context, not the student-discipline context, she offers no rationale for the distinction. Overall, Brantley cannot use federal anti-discrimination law to immunize herself from the consequences of her harassment of a faculty member.

On appeal, Brantley offers additional facts and theories which she would include in her complaint if given leave to amend. But none supports a viable Rehabilitation Act claim. First, she avers that the University discriminated against her when it failed to "activate support services" for her benefit in response to Wolford's January 12, 2025 BCAL report. Even assuming the University had such an obligation, this allegation conflicts with Brantley's statement in her complaint that the University's Title IX office *did* reach out to her in February 2025 in connection with Wolford's BCAL report. But she "did not engage" because she had a negative view of the Title IX office based on prior interactions.

Second, Brantley faults the disciplinary investigator for failing to accommodate her "processing impairments" by limiting her to submitting two emails in response to the investigation. But Brantley fails to explain why communication by email was not a proper accommodation. In fact, the record shows that Brantley asked the investigator to be able to "respond to any

---

[5] *See Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1052 (5th Cir. 1998) ("Hamilton was not terminated because of his disability but rather because he violated BELL's policy on workplace violence. . . . Although Hamilton argues that the incident was caused by his PTSD, we are persuaded that the ADA does not insulate emotional or violent outbursts blamed on an impairment."); *Harkey v. NextGen Healthcare, Inc.*, No. 21-50132, 2022 WL 2764870, at *4 (5th Cir. July 15, 2022) ("That Harkey's 'severe, unprofessional, [and] inappropriate' conduct was purportedly caused by her sleepwalking disorder is of no matter. The ADA does not give employees license to act with impunity.").

questions via written communication to allow for extra time to think and respond, and not to be asked to provide verbal responses." Given that Brantley was afforded the opportunity to respond by her preferred medium, her allegation that the disciplinary investigator failed to accommodate her processing impairment is patently frivolous.

Lastly, Brantley attempts to salvage her retaliation claim by alleging a different basis for the claim. Brantley now alleges that she engaged in protected activity when she filed an Office of Civil Rights complaint against the University in the summer of 2024 and that she told Wolford about the complaint on January 3, 2025. She contends Wolford then took adverse action against her by (1) filing the BCAL report on January 12, 2025 and (2) by reporting her to the Office of Student Conduct for discipline on March 31, 2025. These theories fail. A Rehabilitation Act retaliation claim requires the plaintiff to allege "(1) engagement in protected activity, (2) an adverse employment action, and (3) a causal connection between the two."[6] First, Wolford's submission to BCAL does not constitute "adverse action;" Brantley herself claims the reporting system was meant to "activate support services" for students, not to punish them. Second, Brantley's conclusory allegation that her disclosure of the prior complaint caused Wolford to refer her for discipline is not plausible. The court has reviewed Brantley's voluminous email communication with Wolford, which she attached to her complaint. It is clear from this record that Brantley's failure to comply with Wolford's increasingly desperate requests to cease contacting him caused him to submit the disciplinary referral, not her passing disclosure of a prior Civil Rights complaint in one of her many emails sent months earlier.

AFFIRMED.

---

[6] *January v. City of Huntsville*, 74 F.4th 646, 653 (5th Cir. 2023).